UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ISMET DEARI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> vs.<br><br>INTEGRITY SOLUTION SERVICES, INC.<br><br>    Defendant. | Case No.: 13 CV 215<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Ismet Deari is an individual who resides in the Eastern District of Wisconsin (Kenosha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA in that he engaged in a consumer credit transaction by acquiring cellular telephone services for personal, family or household purposes. Wis. Stat. § 421.301(17).

6. Defendant Integrity Solution Services, Inc., ("ISS") is a foreign corporation with its principal place of business located at 20 Corporate Hill Drive, St. Charles, MO 63301.

7. ISS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. ISS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. ISS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

9. Plaintiff entered into a consumer credit transaction with AT&T, or an affiliate or predecessor corporation, for cellular telephone service.

10. On or about February 13, 2013, ISS mailed a debt collection letter to Plaintiff regarding an alleged debt placed with ISS. Upon information and belief, this was the first letter Plaintiff was sent by ISS. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Exhibit A attempts to collect an "AT&T FEE" of $363.47.

13. Upon information and belief, $363.47 is 18 percent of the listed "Original Balance" of $2,019.30.

14. Plaintiff's cellular service contract with AT&T was for services, specifically AT&T cellular phone services, and involved agreements to render services and defer payment, under which finance charges, including but not limited to early termination fees, were or could

be imposed. Such agreements are "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

15. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

16. Plaintiff's cellular phone contract was for "services," namely cellular telephone service.

17. Plaintiff's cellular phone contract was not a pre-paid contract.

18. Plaintiff's cellular phone service contract was an extension of "credit." Wis. Stats. 421.301(14); *Murray v. New Cingular Wireless Servs.*, 432 F. Supp. 2d 788, 791 (N.D. Ill. 2006):

> [C]onsumers who sign up for a wireless phone plan are extended credit because they pay for service at the end of the month rather than buying the minutes in advance. ... At a minimum, a consumer must sign up for a plan that is $29.99, but this credit can extend into hundreds or thousands of dollars depending on the consumer's actual use and the plan selected. Virtually 100% of the wireless phone service purchased by the consumer would be on credit.

19. Upon information and belief, Plaintiff paid an amount monthly for a set number of minutes and paid extra for minutes he used exceeding their monthly allotment. The ability to use cellular minutes above the number designated by the customer's plan and to pay for those minutes later, is clearly incurring debt and deferring its payment. Wis. Stats. § 421.301(14).

20. Plaintiff's cellular service contract was payable in installments.

21. Under a cellular phone service contract, the consumer incurs an obligation to pay the entire amount of the contract monthly, over the contract's term.

3

22. For example, under a cellular plan labeled "$50 per month" with a 2-year term, the consumer is obligated to pay, at a minimum, $1,200.00. The payments are made in $50 monthly installments (plus charges for additional use over the number of "minutes" in the contract) over 24 months.

23. Plaintiff's cellular service contract also included "finance charges" that "may be imposed." *See* Wis. Stat. §§ 421.301(10), 421.301(20).

24. Wis. Stat. § 421.30(20) defines a "finance charge" as:

> the sum of all charges, payable directly or indirectly by the customer as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the creditor or any other person on behalf of the customer to the creditor or to a 3rd party unless the creditor had no notice or knowledge of the charges paid or payable to the 3rd party. The term does not include any charge with respect to a motor vehicle consumer lease. The term includes the following types of charges to the extent they are not permitted additional charges under s. 422.202, delinquency charges under s. 422.203 or deferral charges under s. 422.204:

25. Upon information and belief, Plaintiff's cellular service contract with AT&T included an early termination fee, which Plaintiff would have to pay if he canceled his service contract prior to the expiration of the term.

26. Early termination fees are "finance charges" that "may be imposed," in that they are payable directly by the customer and are not permitted additional charges under Wis. Stat. §§ 422.202-422.210.

27. Further, to the extent that Plaintiff's cellular service contract was an "other than open-end credit plan," ISS's 18 percent charge exceeds the maximum delinquency charge permitted under the WCA. Wis. Stat. §§ 422.203(1) ("…amount not to exceed $10 or 5% of the unpaid amount of the installment, whichever is less."), 421.301(27)(c).

28. The WCA treats delinquency charges in excess of the amount permitted by Wis. Stat. § 422.203(1) as finance charges. Wis. Stat. § 421.30(20).

4

29.     Upon information and belief, Plaintiff's AT&T's service contract was not a pre-paid contract, and it included an early termination fee and other fees incidental to the payments for phone service.

30.     The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

31.     Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

32.     Moreover, even if Plaintiff's contract with AT&T did specifically allow for reimbursement of AT&T's collection costs, and if Wis. Stat. § 422.413(1) did not apply, upon information and belief ISS's flat, 18 percent fee is neither a measure of AT&T's incidental or consequential damages, nor a measure of ISS's costs of collection. *Seeger v. Afni, Inc.*, 548 F.3d 1107, 1112-13 (7th Cir. 2008). A flat percentage fee necessarily varies with each account and cannot plausibly be a measure of costs of collection.

## COUNT I – FDCPA

33.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

5

34. ISS's attempt to collect prohibited collection fees violates 15 U.S.C. § 1692f. *See also Seeger*, 548 F.3d at 1111.

35. ISS's representation that collection fees are owed violates 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(5).

36. ISS failed to state the true amount of the debt owed, in violation of 15 U.S.C. § 1692g(a)(1).

## COUNT II – WCA

37. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

38. Plaintiff's service contract with AT&T was a consumer credit transaction.

39. Collection fees on consumer credit transactions are prohibited by the Wisconsin Consumer Act. Wis. Stat. §§ 422.202, 422.413; *Patzka*, 917 F. Supp. at 659.

40. ISS's attempt to collect prohibited collection fees violates Wis. Stat. § 427.104(1)(j).

## COUNT III -- WCA

41. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

42. Nothing in Plaintiff's contract with AT&T or Wisconsin Law purports to permit ISS to add a collection fee that is a flat percentage of the balance.

43. The 18 percent of the balance fee is not a measure of AT&T's incidental or consequential damages or a measure of ISS's costs of collection.

44. ISS's attempt to collect prohibited collection fees violates Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

45. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by ISS claiming a collection fee, (c) for AT&T cellular phone service obtained for personal, family or household purposes, (d) on or after February 27, 2012, (e) that was not returned by the postal service.

46. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

47. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and the WCA.

48. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

49. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

50. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

51. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 27, 2013

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
David J. Syrios (SBN 1045779)
John D. Blythin (SBN 1046105)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
dsyrios@ademilaw.com
jblythin@ademilaw.com

8